**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE WASHINGTON SUN TO UNSEAL CERTAIN JUDICIAL RECORDS IN UNITED STATES V. TRAYON WHITE | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THE WASHINGTON SUN'S MOTION TO UNSEAL**

Pursuant to Local Criminal Rule 57.6, The Washington Sun respectfully requests that the Court unseal certain judicial records relating to D.C. Councilmember Trayon White's potential assertion of an entrapment defense in *United States v. Trayon White* ("*US v. White*"), Case No. 24-cr-406-RC; the government's announced intent to introduce "predisposition" evidence to rebut that defense; and the transcript of the hearing held on this issue. These records are presumptively public under the common law and the First Amendment, yet they have been sealed with virtually no on-the-record justification. This lack of transparency is particularly troubling given the substantial and legitimate public interest in this prosecution generally and this issue specifically: a sitting councilmember, expelled and re-elected, was charged with bribery and considered whether (but decided not) to allege that the government induced him into this criminal conduct. Under the common law and First Amendment rights of access, and for the reasons below, the Court should unseal the judicial records and hearing transcript related to Councilmember White's raising of the entrapment defense and the government's proffer of predisposition evidence in response.

## BACKGROUND

Trayon White, a D.C. Councilmember since 2017, was charged in August 2024 with bribery arising out of allegations that he agreed to accept upwards of $150,000 in exchange for

steering millions of dollars in government contracts to a particular contractor's companies.[1] Councilmember White was expelled from the D.C. Council after his arrest, but he was re-elected months later in a special election to fill the vacant seat.[2] He has thus remained an active D.C. legislator through the pendency of his criminal proceeding. Councilmember White's trial took place from September 11 to September 28, 2026, ultimately ending in a hung jury and mistrial.[3] The government has announced its intent to re-try Councilmember White,[4] though his Motion for Judgment of Acquittal is not yet fully briefed. *See* ECF 141 (setting briefing schedule).[5]

The docket reflects that Councilmember White considered asserting an entrapment defense both before and during the pendency of the trial. *See, e.g.*, ECF 65 ("Mr. White's counsel made clear that the defense has not determined whether they will rely on a theory of entrapment at trial and suggested that the viability of that defense will likely depend on CHS-1's testimony"). On September 21, 2026, however, Councilmember White withdrew his request for a jury instruction on an entrapment defense. *See* ECF 124. A subsequent Minute Order – one of the few publicly available records on the dispute over the entrapment defense – provides the context that the government intended to offer "predisposition" evidence to rebut Councilmember

---

[1] Robert Legare & Stefan Becket, *Trayon White, D.C. Councilmember, Hit With Federal Bribery Charge*, CBS News (Aug. 19, 2024), https://www.cbsnews.com/news/trayon-white-bribery-dc-city-council/; *see also* Compl., *US v. White* (ECF 1).

[2] Jenny Gathright & Martin Austermuhle, *What to Know About D.C. Council Member Trayon White's Bribery Trial*, Wash. Sun (Sept. 14, 2026), https://www.washingtonsun.com/metro/trayon-white-bribery-trial.

[3] Jenny Gathright, *Trayon White Says He Is 'Redeemed Again' After Judge Declares a Mistrial*, Wash. Sun (Sept. 28, 2026), https://www.washingtonsun.com/metro/trayon-white-verdict; *see also* Min. Order Declaring Mistrial (Sept. 28, 2026).

[4] Jenny Gathright, Martin Austermuhle & Michael Brice-Saddler, *Trayon White's First Trial Is Over. The Political Saga Is Not.*, Wash. Sun (Sept. 30, 2026), https://www.washingtonsun.com/metro/trayon-white-bribery-trial-dc.

[5] All ECF entries cited herein are filings in *United States v. White* unless otherwise noted.

White's entrapment defense, and that the councilmember opposed admission of such evidence. *See* Min. Order (Sept. 28, 2026). The three documents referenced in that Minute Order, which presumably pertain to Councilmember White's entrapment defense and the government's predisposition evidence, remain under seal. They are: the Government's Response to Defendant's Pretrial Proffer of Inducement Evidence for Entrapment Defense (ECF 98); the Order Declining to Decide Defendant's Inducement Proffer (ECF 112); and Defendant's Motion to Exclude Certain Evidence of Predisposition (ECF 123).

Movant The Washington Sun ("The Sun") is a news organization that covers politics and policy and the people who shape life in Washington. The Sun has a newsroom of roughly 100 journalists, many of whom cover exclusively D.C. news and politics. The Sun extensively covered Councilmember White's trial and sent a reporter to nearly every day of the proceeding. *See supra* at 2 nn. 2-4. Indeed, its reporter Jenny Gathright was one of the journalists excluded from the courtroom during the sealed hearing at issue. To continue informing the public about the prosecution of Councilmember White, The Sun now respectfully requests the Court unseal ECF 98, 112, and 123, as well as the transcript for the hearing on September 21, 2026, during which the courtroom was closed (together, the "Sealed Records").

## ARGUMENT

This Court should unseal the Sealed Records under both the common law and First Amendment right of access. The right of access to judicial records and proceedings is "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). The First Amendment and the common law thus create powerful presumptions of access, and neither presumption has been overcome on the record here.

## I. THE COMMON LAW RIGHT OF ACCESS REQUIRES UNSEALING.

The common law creates "a strong presumption in [] favor" of access, "which courts must weigh against any competing interests." *MetLife*, 865 F.3d at 663. The common law access analysis requires a two-stage analysis. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *Id.* at 665-69. If they are judicial records, then courts apply the six-factor test set out in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), to determine whether the presumption of access has been rebutted. Those factors are:

> (1) [T]he need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*CNN, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021); *see also Hubbard*, 650 F.2d at 317-21.

Under controlling case law, the Sealed Records are "judicial records" to which the public has a presumptive common law right of access. Two of the Sealed Records – the Government's Response to the Pretrial Proffer (ECF 98) and the Defendant's Motion to Exclude Predisposition Evidence (ECF 123) – are indisputably judicial records because they were "filed before [a] . . . court's decision and were intended to influence it." *MetLife*, 865 F.3d at 668. The hearing transcript, which presumably captured the parties' arguments on Councilmember White's motion *in limine*, is a judicial record for the same reason. Finally, the Court's Order Declining to Decide Defendant's Inducement Proffer (ECF 112) is without doubt a judicial record, as "[c]ourt decisions are the 'quintessential business of the public's institutions' . . . [a]nd the issuance of public opinions is core 'to the transparency of the court's decisionmaking process.'" *Leopold v.*

*United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996), and *MetLife*, 865 F.3d at 668).

Because the public has a presumptive right of access to the Sealed Records under the common law, the Court should release them unless the party seeking sealing rebuts the strong presumption of access under *Hubbard* and *MetLife*. The proponent of sealing bears the burden "to come forward with specific reasons why the record, or any part thereof, should remain under seal." *FTC v. Match Grp., Inc.*, 2023 WL 3181351, at *8 (D.D.C. May 1, 2023) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991)). Neither party has made such a showing on the record, let alone one sufficient to overcome the powerful presumption of access.

**Factor 1:** The first *Hubbard* factor assesses the need for public access to the documents at issue. Here, "[t]he public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017). The common law right of access also strongly favors unsealing in "situations involving access to the courtroom conduct of a criminal trial or a pre-trial suppression motion"; "cases where the government is a party"; where "the Records involve governmental misconduct of general public interest"; and/or where "the documents also involve a key evidentiary decision in a criminal case." *In re Pub. Def. Serv. for D.C. to Unseal Certain Records*, 607 F. Supp. 3d 11, 25 (D.D.C. 2022). All of these factors apply to the Sealed Records relating to Councilmember White's potential entrapment defense and the government's rebuttal predisposition evidence. *See In re Access to Jud. Records in Case No. 23-SC-31*, 704 F. Supp. 3d 161, 169 (D.D.C. 2023) ("That rule comes from the insight that public attention can act as a strong corrective to government abuses of power."); *Garrison v. Louisiana*, 379 U.S. 64, 77

(1964) (recognizing "the paramount public interest in a free flow of information to the people concerning public officials, their servants").

**<u>Factor 2</u>:** The second *Hubbard* factor asks whether the public has previously had access to the requested records. Here, because the Sealed Records are still secret, it remains to be seen whether the contents of those records have previously been made public.

**<u>Factors 3 and 4</u>:** The third and fourth *Hubbard* factors inquire into who has objected to disclosure and the strength of any property or privacy interests the objector has asserted. Here, based on the limited information available, it appears that Councilmember White is the objecting party, and Councilmember White's status as a public official substantially diminishes any privacy interest that he might assert. *See, e.g.*, *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984); *Bartko v. DOJ*, 898 F.3d 51, 69 (D.C. Cir. 2018) (citing *Stern*).

**<u>Factor 5</u>:** The fifth *Hubbard* factor considers the "possibility of prejudice" to the party objecting to access. In the first instance, it is difficult to identify the potential prejudice to Councilmember White given "the obvious circumstance that he has been charged with serious felony violations, based on alleged offense conduct described in detail in publicly filed documents[.]" *United States v. Jackson*, 2021 WL 1026127, at *8 (D.D.C. Mar. 17, 2021). To the degree Councilmember White objects to unsealing to protect the jury pool, the D.C. Circuit has explicitly rejected this argument. "[V]oir dire has long been recognized as an effective method of rooting out [any] bias" that may be caused when "some members of the potential jury pool are so affected by the broadcasting of the tapes that they are unqualified" as jurors. *In re Nat'l Broad. Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981); *United States v. Thompson*, 1989 WL 248625, at *2 (D.C. Cir. Oct. 13, 1989) ("[A] searching and carefully conducted voir dire of

potential jurors in future trials will fully protect the defendants' rights to a fair trial without unduly impairing the public's right of access.") (cleaned up).[6]

**Factor 6:** The sixth *Hubbard* factor weighs the purposes for which the documents were introduced during the judicial proceedings. "When considering the sixth *Hubbard* factor, the D.C. Circuit has held that there is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them." *In re Search of One Device & Two Indivs. Under Rule 41*, 784 F. Supp. 3d 234, 247 (D.D.C. 2025) (cleaned up) (quoting *In re Access to Video Exhibits*, 575 F. Supp. 3d 101, 114 (D.D.C. 2021)). The Sealed Records here arise out of Councilmember White's defense that he was induced into committing a serious felony. They are relevant to Councilmember White's state of mind (and, thus, the ultimate issue of guilt) and to alleged government misbehavior via entrapment. "Because [Councilmember White's] motion attempted to undermine the reliability of the [government evidence] in his case by showing a pattern of misconduct by [the prosecution], evidence establishing that pattern was obviously relevant." *In re Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d at 28.

In sum, the common law right of access and the balance of the *Hubbard* factors compel unsealing, and the Court need not even address the constitutional access right if it agrees that the common law provides complete relief. *See, e.g., In re App. of Chodiev*, 2021 WL 1795423, at *8 (D.D.C. Mar. 23, 2021) (finding the "requested relief can be granted by applying the *Hubbard* factors to evaluate CNN's claim under the common law right of access to records" and therefore

[6] *See also, e.g., United States v. Criden*, 648 F.2d 814, 827 (3d Cir. 1981) ("[T]he appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination[.]"); *United States v. Martoma*, 2014 WL 164181, at *7 (S.D.N.Y. Jan. 9, 2014) ("Numerous courts in high-profile cases have recognized that a thorough voir dire may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.") (collecting cases).

declining to reach First Amendment arguments). To be sure, however, the Court can independently reach the same conclusion under the constitutional right of access as well.

## II. THE FIRST AMENDMENT INDEPENDENTLY REQUIRES UNSEALING.

"[T]he First Amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *In re Search of One Device*, 784 F. Supp. 3d at 252. As with the common law right of access, there is "a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). "First the court must determine whether a qualified First Amendment right of public access exists. If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up). Courts follow the "experience and logic" test to determine whether the constitutional right of access applies to records or a proceeding. *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986). Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the functioning of the particular process." *Id.* at 8.

As with the common law right of access, the constitutional right of access plainly attaches to the Sealed Records – motion papers, an order, and a hearing transcript pertaining to Councilmember White's entrapment defense and the government's potential introduction of "predisposition" evidence. The D.C. Circuit has repeatedly described the long tradition of public access to criminal trials, situating them well within the First Amendment right based on the "experience and logic" test. *See, e.g.*, *Dhiab*, 852 F.3d at 1093 (describing the "English tradition

of public criminal trials, beginning—the [Supreme] Court wrote—before the Norman conquest"); *In re Search of One Device*, 784 F. Supp. 3d at 249 ("[T]he Court is unaware of any practice of keeping judicial orders sealed, let alone a long standing one.").

Where, as here, this constitutional right of access applies, "the proceedings cannot be closed unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (cleaned up). These "specific findings" must demonstrate both "a substantial probability" of harm that "closure would prevent" and that "reasonable alternatives to closure cannot adequately protect" against that harm. *Id.* at 14. The public docket contains no such argument by either party or any finding by the Court that withholding the Sealed Records is essential to preserve any higher values. Indeed, in a case at the apex of public interest – where the federal government has charged a District legislator with bribery, and the District legislator has raised a defense of entrapment by the government – it is difficult to imagine what higher interest closure could possibly serve. *See, e.g.*, *In re Special Proc.*, 842 F. Supp. 2d 232, 235 (D.D.C. 2012) (unsealing report on prosecutorial misconduct in trial of sitting Senator under First Amendment right of access).[7]

Moreover, the First Amendment right of access is particularly potent as it relates to the transcript of the Court's September 21, 2026 hearing regarding Councilmember White's entrapment defense and the government's predisposition evidence. It is well settled that "[w]hat

---

[7] In requiring unsealing, Judge Sullivan made a compelling case for broad public access: "In July 2008, attorneys in the *Public* Integrity Section of the Department of Justice indicted a *public* official for allegedly failing to report gifts on his *public* disclosure forms. The attorneys then tried the defendant in the most *public* manner possible, and when they obtained a guilty verdict, they held a press conference to proclaim victory to the *public.* As a result of that verdict, the *public* official lost his bid for reelection, which tipped the balance of power in the United States Senate." *In re Special Proc.*, 842 F. Supp. 2d at 235.

transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). Indeed, as the Supreme Court observed in *Richmond Newspapers, Inc. v. Virginia*, "[t]o work effectively, it is important that society's criminal process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it." 448 U.S. 555, 571-72 (1980) (cleaned up) (Burger, C.J.). Thus, "the right to attend criminal trials is implicit in the guarantees of the First Amendment." *Id.* at 580; *see also id.* at 572 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). In *Press-Enterprise II*, the Supreme Court expressly held that this First Amendment right of access to criminal trials extends to pretrial hearings in criminal cases as well and concluded that the trial court had erred in initially refusing to produce a transcript of such a hearing to the press. 478 U.S. at 10-11.[8] That right of access logically extends to motion *in limine* hearings as well, which can occur prior to trial or, as here, during trial. In both situations, "the absence of a jury, long recognized as 'an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge,' makes the importance of public access to a preliminary hearing even more significant." *Id.* at 12-13 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968)).

Finally, and as the Supreme Court has explicitly held, the First Amendment right of access is a right of meaningful access. Courts are therefore "obligated to take every *reasonable* measure to accommodate public attendance at criminal trials." *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curiam) (emphasis added). Here, because the press and public were excluded

---

[8] As the Court explained, from "the celebrated trial of Aaron Burr for treason" through "the present day, the near uniform practice of state and federal courts has been to conduct preliminary hearings in open court. . . . Open preliminary hearings, therefore, have been accorded 'the favorable judgment of experience.'" *Press-Enterprise II*, 478 U.S. at 10-11 (quoting *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 (1982)).

from the September 21, 2026 hearing as to Councilmember White's evidentiary motion, the First Amendment requires this Court to release a transcript of the hearing without redactions "unless specific, on the record findings are made demonstrating" that those withholdings are "essential to preserve higher values and [are] narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14. Moreover, because the First Amendment right of access is a right of *contemporaneous* access to judicial records and proceedings, the Court should release both the transcript and the other Sealed Records as expeditiously as possible. *See Wash. Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) (recognizing "the critical importance of *contemporaneous* access to [court records] to the public's role as overseer of the criminal justice process") (emphasis added).

## CONCLUSION

For the foregoing reasons, The Sun respectfully requests that the Court order the Sealed Records be unsealed and placed on the public docket.

Dated: October 15, 2026

Respectfully submitted,

BALLARD SPAHR LLP

By: ____________________

Maxwell S. Mishkin (#1031356)
Maya D. Gandhi (#NY0584)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
mishkinm@ballardspahr.com
gandhim@ballardspahr.com

*Counsel for The Washington Sun*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2026, I caused true and correct copies of the foregoing to be served by email and U.S. Mail on the following:

Warren Gary Kohlman
1845 R Street Northwest
Washington, DC 20009
gwkohlman@gmail.com

Bruce Hamilton Searby
Nicole Christine Ledesma
SEARBY PLLC
2000 P Street, NW, Suite 750
Washington, DC 20036
bsearby@searby.law
nledesma@searby.law

*Counsel for Trayon White*

John Crabb, Jr.
U.S. Attorney's Office for the District of Columbia
Judiciary Center Building
555 Fourth Street, NW, Room 11-844
Washington, DC 20530
John.D.Crabb@usdoj.gov

Rebecca G. Ross
U.S. Attorney's Office for the District of Columbia
610 D Street NW
Washington, DC 20530
Rebecca.Ross2@usdoj.gov

*Counsel for the United States*

Maxwell S. Mishkin